IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN H.**[1], | Case No. 1:21-cv-1233-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Joseph J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

John H. brings this appeal to challenge the decision of the Commissioner of the Social

Security Administration (Commissioner) denying applications for Disability Insurance Benefits

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

(DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on March 9, 2018, alleging disability beginning on October 26, 1978. AR 15, 73. Plaintiff was born on October 26, 1978. AR 72. In April 2020, Plaintiff amended his alleged onset date to August 13, 2017. AR 16, 257. Thus, Plaintiff was 38 years old as of his amended alleged onset date. In his application, Plaintiff alleged a nonverbal learning disability, proprioception, communication difficulties, and depression. AR 72, 73. The Commissioner denied Plaintiff's applications initially on November 29, 2018, and again upon reconsideration in March 2019. AR 15. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). *Id.*

On January 26, 2021, Plaintiff attended a telephonic hearing. AR 15. The ALJ issued a decision denying Plaintiff's claim for benefits in February 2021. AR 24. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step may be potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

PAGE 3 – OPINION AND ORDER

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ applied the five-step sequential process to determine whether Plaintiff was disabled. AR 16-19. As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirement through March 31, 2021. AR 17. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of August 13, 2017. *Id.* At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder; unspecified neurodevelopment disorder (nonverbal learning disorder); obsessive-compulsive personality disorder; generalized anxiety disorder; and substance abuse (status-post substance rehab program). AR 17-18.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a Listing. AR 18. Because the ALJ found no impairment qualifying Plaintiff as disabled, the ALJ assessed Plaintiff's RFC before moving to

step four of the sequential analysis. AR 19-22. The ALJ found that Plaintiff could perform a full range of work at all exertional levels, but had the following additional nonexertional limitations:

> [Plaintiff] is limited to understanding, remembering, and carrying out only simple, routine tasks consistent with DOT GED reasoning level of 2 or less and is incapable of fast passed, production-type of work. His is capable of only occasional, brief, superficial interaction with co-workers, supervisors and the public. He needs static work environment with few changes in work routines and settings.

AR 19.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. AR 22. At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the opinion of a vocational expert. From this five-step process, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy. AR 23. The ALJ therefore concluded that Plaintiff was not disabled from the amended alleged onset date through February 22, 2021, the date of the ALJ's decision. AR 24.

## DISCUSSION

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony and rejecting lay witness testimony. Each alleged error is addressed in turn

### A. Plaintiff's Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Here, the ALJ found the that Plaintiff suffered severe impairments, thus satisfying this first step of the two-step evaluation. AR 17-18.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). An ALJ may not single out isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as inconsistent with the medical record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that just because "a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace").

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other

methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133,

1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'") (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms and did not find evidence of malingering. The ALJ, however, discounted the extent of Plaintiff's alleged symptoms because his symptoms improved with treatment, he could work on a literary project, and his symptoms were "inconsistent because they are not supported by the medical evidence record." Each reason is addressed in turn.[2]

### 1. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI

---

[2] The Commissioner argues additional reasons in her brief, but those reasons are *post hoc* rationalizations provided by the Commissioner. The Court discusses only the reasons provided by the ALJ in his opinion. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (cleaned up). "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

> As the Ninth Circuit explained in *Garrison*,
>
>> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

The ALJ isolated a few examples of Plaintiff's improved symptoms following treatment for depression. In May 2015, Plaintiff was evaluated by Dr. Mercedes Dickinson, Ph.D. AR 423. In her recommendation, Dr. Dickinson suggested that Plaintiff seek counseling to address his depression even though his symptoms appeared adequately managed. AR 428. The ALJ highlighted that in November 2015, Plaintiff reported his depressive symptoms improved with medication management. AR 20, citing AR 444. The ALJ also referenced Plaintiff's report of similar good results for depression symptoms in a January 2017 treatment note. AR 20, citing AR 456. The ALJ summarized from these two treatment notes that Plaintiff "has reported that medication management is effective in managing Plaintiff's depressive symptoms." AR 20, citing AR 444, 456. The ALJ also noted that Plaintiff had managed his anxiety with daily

PAGE 10 – OPINION AND ORDER

cannabis use. AR 20. Plaintiff testified that as of the hearing he had not treated with cannabis in 18 months and the record supports that he had ended his cannabis use. AR 46, 548.

The ALJ relies on a handful of treatment notes where Plaintiff self-reports that he is "doing well." For example, the ALJ cites a June 2020 treatment note where Plaintiff states that he is doing well. AR 21. A further review of that treatment note belies Plaintiff's self-report. Plaintiff was moving in with his parents because of his limitations. In addition, Plaintiff had so much difficulty focusing during that treatment session it was shortened. AR 548. The ALJ should have considered these facts and not merely the superficial statement by Plaintiff that he was "doing well."

Additionally, reports of improvement in symptoms "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017 (citing *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). Here, the ALJ failed to consider whether Plaintiff's reports of improvements was the product of his environment—with limited stressors and being taken care of by his parents—and how that might change once Plaintiff is not in such a setting. *See, e.g.*, *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

Further, the ALJ's opinion does not reference any improvement, treatment, or management of Plaintiff's other mental health impairments that the ALJ found were severe

impairments, including Plaintiff's neurodevelopment disorder and obsessive-compulsive disorder. Plaintiff has suffered from the symptoms of his mental health disorders since childhood. AR 327, 334. For the evaluative period of August 13, 2017 to the date of the hearing, the ALJ relied upon few instances in the record of improvement of depression or generalized statements that Plaintiff was "doing well." This was insufficient to show that Plaintiff's mental health impairments improved with treatment enough to provide clear and convincing reasons to discount Plaintiff's testimony.

### 2. Activities—Literary Project

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits") (quotation marks omitted); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and

noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison*, 759 F.3d at 1017.

The ALJ determined that Plaintiff's ability to focus for long periods of time on his "passion project" of working on his Frankenstein book was sufficient for Plaintiff to "carry out simple, routine tasks consistent with DOT GED reasoning level of 2 or less." AR 19. This determination is misplaced. Plaintiff testified about his work on a literary "passion project" and hoped to have the book published. AR 20, 493. At the time of the hearing, the ALJ inquired about the project. AR 38-43, 47-50. Plaintiff testified the project began several years ago, is more than 3,000 pages, requires ongoing research and, as of the hearing, remains incomplete despite motivation to publish the novel. AR 40, 47, 56-57. The fact that Plaintiff has spent years working on a project while in a sheltered home environment, the project is close to 3,000 pages, and remains unfinished, is not a clear and convincing reason to discount Plaintiff's testimony regarding his limitations in concentration, persistence, or pace. It does not provide support that Plaintiff can perform in a work environment where he will need to focus on and complete tasks.

### 3. Objective Medical Evidence

The ALJ began his assessment of Plaintiff's testimony by stating that it was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" and that Plaintiff's statements were "inconsistent because they are not supported by the medical evidence of record." AR 20. The ALJ continued with a general narrative describing Plaintiff's medical records, highlighting certain aspects of treatment notes that supported the ALJ's findings. AR 20-21. Nowhere did the ALJ perform the required analysis of

specifying which testimony he was discounting and linking it with which medical evidence contradicted or failed to support the testimony. *See Lambert*, 980 F.3d at 1277; *Brown-Hunter*, 806 F.3d at 494; *Smolen*, 80 F.3d at 1284.

An ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Vasquez*, 572 F.3d at 592 Astur). Simply because an ALJ "set out his RFC and summarized the evidence supporting his determination" does not create a sufficient basis on which a court can infer "that the ALJ rejected [the petitioner's] testimony to the extent it conflicted with that medical evidence." *Id.* That is all the ALJ did here—he made a vague statement that Plaintiff's testimony conflicted with the medical evidence and summarized the evidence, highlighting the evidence supporting the ALJ's determination. The ALJ's analysis fails under *Treichler*, *Brown-Hunter*, *Smolen*, and other Ninth Circuit cases requiring the ALJ to identify the Plaintiff's specific testimony and link it with conflicting medical evidence.

Further, even if the ALJ did provide specific testimony unsupported by the medical record, the lack of corroborating objective medical evidence alone is only a "relevant factor in determining the severity" of claimant's alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective

medical evidence does not substantiate your statements"). The ALJ failed to provide a clear and convincing reason to discount Plaintiff's testimony.

### B. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d at 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects [his] ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay witness testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness'] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's parents and step-grandmother submitted four written statements and completed one Third-Party Function Report on behalf of Plaintiff's DIB and SSI claims. AR 5-8, 335-43,

344-45, 360, 389-90, 394-95, 396-97. Plaintiff's parents Connie and Kenneth H. submitted three written statements (one authored jointly, two authored separately). AR 344-45, 394-97. Step-grandparent Phyllis H. attached a supplemental written statement with her Third-Party Function Report and an additional statement dated May 8, 2020. AR 335-43, 360, 389-90. Phyllis H. married Plaintiff's grandfather prior to Plaintiff's birth. AR 360.

The ALJ stated that he "considered" the lay witness statements but he "decline[d] to evaluate the[ir] persuasiveness" because he they are not "opinions" under current social security rules and regulations. AR 22. The Commissioner argues this was not error because the revised regulations describing how to evaluate medical opinion testimony state that nonmedical opinion testimony need not be evaluated using the same criteria as medical opinions. *See* 20 C.F.R. §§ 404.1520c(d); 416.920c(d). This argument is unpersuasive.

The revised regulations describe how to evaluate medical opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("Our precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations.").

The Commissioner also argues that any error the ALJ committed in failing to address the lay witness submissions was harmless because the lay testimony identified no limitation not already accounted for in Plaintiff's testimony, and that the Court can therefore discount the lay

testimony for the same reasons the ALJ rejected Plaintiff's testimony. Because the Court rejected the ALJ's reasons to discount Plaintiff's testimony, those reasons do not provide a basis to discount the lay testimony. Thus, the ALJ committed harmful error.

## C. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is binding on this Court. *Garrison*, 759 F.3d at 999. The Court first determines whether the ALJ made a legal error and then reviews the entire record to determine whether it is fully developed, free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues does the Court consider whether the ALJ must find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the Court can exercise its discretion to remand for an award of benefits. *Id.* The Court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error for failing to provide specific, clear and convincing reasons to reject Plaintiff's subjective testimony and for rejecting lay witness testimony without explanation. The Court does not, however, find that the record is free of all conflicts and

ambiguities. The ALJ needs to explain his reasoning regarding the lay witness testimony and there are conflicts among, for example, some of the medical provider opinions and Plaintiff's testimony. The Court therefore declines to remand for an award of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 14th day of October, 2022.

>  */s/ Michael H. Simon*
> Michael H. Simon
> United States District Judge